1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   NOAH EUGENE DUENAS,                    No.  2:15-cv-1966-KJM-EFB P

12                  Petitioner,

13        vs.                               FINDINGS AND RECOMMENDATIONS

14   S. PERRY,

15                  Respondent.

16

17        Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

19   entered against him on February 21, 2012 in the San Joaquin County Superior Court on charges

20   of first degree murder (Pen. Code § 187), shooting into an occupied vehicle (Pen. Code § 246),

21   and unlawful possession of a firearm as a minor (Pen. Code § 12101(a)(1)).  He seeks federal

22   habeas relief on the following grounds: (1) his due process rights were violated when he was

23   convicted of first degree murder without sufficient evidence of premeditation and deliberation;

24   (2) the trial court violated his due process rights by declining his counsel's request to instruct the

25   jury on the lesser included offense of voluntary manslaughter based on provocation; (3) the trial

26   court violated his due process rights by instructing the jury on consciousness of guilt by way of

27   concealing evidence (CALCRIM No. 371), over his counsel's objections; and (4) his sentence of

28   fifty years to life constitutes cruel and unusual punishment in contravention of the Eighth

Amendment because it effectively amounts to a life sentence without the possibility of parole. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I. Background**

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A jury found defendant Noah Eugene Duenas guilty of the first degree murder of Jose Lua, and found that defendant personally and intentionally discharged a firearm, causing Lua's death. (Pen.Code, §§ 187, 12022.53, subd. (d).)1 The jury also found defendant guilty of shooting from an occupied vehicle and unlawfully possessing a firearm as a minor. (§§ 246, 12101, subd. (a)(1).) The trial court sentenced defendant to 50 years to life in prison, and defendant timely filed this appeal.
>
> On appeal, defendant first contends insufficient evidence supports the jury's findings of premeditation and deliberation. He further claims the trial court erred in failing to instruct the jury on provocation, as well as in instructing on concealing evidence. He argues his sentence is unconstitutional, and identifies an error in the abstract of judgment. As we will explain, we agree with only the last point. We will affirm but direct the trial court to prepare a corrected abstract of judgment.
>
> **FACTUAL AND PROCEDURAL BACKGROUND**
>
> *People's Case*
>
> Defendant shot the victim, Jose "Boo" Lua, in the head on the evening of March 18, 2010, as he was speaking with Lua, who sat belted in the passenger seat of a parked car at a liquor store. One witness testified he saw Lua roll the window down of the car as defendant approached and then he saw defendant speaking amicably to Lua for about five minutes, with no indication of anger, yelling, or swearing. The conversation ended abruptly when defendant shot Lua once, and then "took off like a banshee" on a push scooter. Lua's girlfriend, who was with him that night but was in the store during the shooting, had never seen Lua with a weapon. After the shooting, she left the store, saw Lua bleeding and tried to help him, and then, according to other witnesses, started screaming for help.
>
> A trained EMT happened upon the scene. He saw a distraught woman being held by two people, saw Lua, radioed for help because he did not have his medical kit with him, cut Lua free from his seat belt and tried to keep his airway open until help could arrive. During this period, no one else approached the car. The EMT saw no gun.

A deputy sheriff on patrol heard the shot and screaming and arrived at the scene just as a radio dispatch went out. He found Lua had a pulse, radioed for medical help, and kept everyone away from the car until help arrived. He saw no gun, nor did another officer who accompanied Lua to the hospital and took charge of his clothing and effects. Two other officers searched the entire car and found an expended .32–caliber cartridge casing near the right front passenger seat, but found no weapons. They did find two mobile telephones and a baggie of what appeared to be prescription pills.

A .32–caliber bullet had entered Lua's right cheek, and the gun muzzle was between one foot and two feet away from the skin when it was fired. The gun was to the right and forward of the head, because the bullet traveled down and back and Lua may have been bent over when he was shot. Lua was not under the influence of alcohol or drugs.

Defendant fled the scene but was found in October 2010 in jail in Alameda County, where he had been booked under a false name.

*Defendant's Case*

Defendant testified he shot Lua in self-defense. He had known Lua as a friend in the past, but had lost contact with him, and had no "beefs" or fights with him and no reason for defendant to shoot Lua, nor was there any reason for Lua to shoot defendant. Defendant had been in trouble at school for non-gang graffiti and throwing a pizza at someone, which is why he had gone to an alternative school. He had been in some fights when he was younger, 11 or 12 years old, and had served some time in juvenile hall and had been put on probation for the graffiti. He was a week shy of 18 at the time of the killing. Defendant denied he was a gang member, but testified had been shot at during a party in October 2009 and bought the gun in December 2009 and began carrying it loaded—where he could easily access it—because he was scared, although he sometimes hid it under a porch. It was in his waistband while he was at the store.

As defendant passed by the car, Lua called out to him. After they spoke in a friendly manner, Lua "confronted" defendant about an incident that "involved my aunt's house being broken into." Specifically, Lua said " 'What's this shit I hear about your aunt accusing me of breaking into her house?' " Defendant replied that he did not know. He knew his aunt's house had been broken into a couple of years before, but did not know who had done it. Lua replied, " 'Fuck that. Fuck that nasty bitch' " and " 'that bitch don't know what she's talking about.' " He added, " 'Fuck her and fuck you.' " Defendant could have walked away, but chose to stay. Then Lua said: " 'What? What? You want some of this?' " Lua began to reach or bend down, and based on Lua's "whole demeanor, how he was looking at me, his tone of voice, I mean everything," defendant testified he "thought [Lua] was going for like a gun or something. So I grabbed my pistol and I had shot and I ran away." "I just reacted. I didn't aim." He knew he had

3

shot Lua, but he did not turn himself in because he was scared. When he was arrested in Oakland he gave a false name—actually, two different false names—"to buy some time" because he had already been working with an aunt to get an attorney so he could surrender. He left the gun in Stockton because he was scared, but he could not remember where. When questioned in jail about the killing, he denied being at the store because he wanted to talk to his attorney first, although he spoke to the officer after waiving his rights.

One of defendant's former teachers testified she thought "he was calm, peaceful, non-violent, a leader" and someone she could rely on. On cross-examination, she testified her opinion would not change if she heard he had attacked students or engaged in fights several times in 2004 and 2005. Defendant's great-aunt testified he lived with her from 1998 to 2007 (defendant described her as a "mother figure"), and in her opinion he was "not violent. He's very peaceful." On cross-examination, she testified she had not learned of incidents of school violence involving defendant in 2004 and 2005, but, as his caregiver, the school would have contacted her in the event of any issues.

*People v. Duenas*, No. C070823, 2014 WL 2111212, at *1–2 (Cal. Ct. App. May 21, 2014), review denied (July 30, 2014).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

////

4

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (citing *Parker v. Matthews*, 567 U.S. 37, 49 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

/////

/////

/////

**III. Petitioner's Claims**

    **A. Sufficiency of the Evidence**

      In his first ground for habeas relief, petitioner argues that his first degree murder conviction was not supported by sufficient evidence of premeditation and deliberation. ECF No. 1 at 5, 32-33.[2] The California Court of Appeal rejected this argument and found that substantial evidence supported the verdict. It reasoned as follows:

> *Premeditation and Deliberation*
> Defendant contends no substantial evidence supports the jury's conclusion that he committed the murder with premeditation and deliberation. We disagree. Viewing the manner and circumstances of the killing in the light favorable to the verdict, we find substantial evidence in the record to support that verdict.
>
> > "When considering a challenge to the sufficiency of the evidence to support a criminal conviction, 'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.]
> >
> > "In this context, 'premeditated' means 'considered beforehand,' and 'deliberate' means 'formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.' [Citations.] The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.' " (*People v. Mayfield* (1997) 14 Cal.4th 668, 767 (*Mayfield* ); *see People v. Mendoza* (2011) 52 Cal.4th 1056, 1068–1069 (*Mendoza* ).)
> >
> > Our Supreme Court has stated: "In *People v. Anderson* (1968) 70 Cal.2d 15 [ ], we identified three types of evidence—evidence of planning activity, preexisting motive, and manner of killing—that assist in reviewing the sufficiency of the evidence supporting findings of premeditation and deliberation. [Citation.] We have made clear, however, that ' "*Anderson* did not purport to establish an exhaustive list that would exclude all other types and combinations of evidence that could support a finding of premeditation and deliberation." ' " (Mendoza, supra, 52 Cal.4th at p.

---

[2] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

8

1069.)

> In this case, the jury could rationally conclude that defendant approached Lua and engaged him in a benign discussion to lull him into a sense of security, and then drew his pistol and fired one fatal shot directly into Lua's head. The mechanics of the killing, a single shot to the head at close range, suggest deliberation. Approaching Lua with a concealed firearm and drawing it during an unremarkable conversation, while Lua was belted into his seat, suggests premeditation. Although, as the prosecutor conceded in argument, the evidence failed to show defendant's subjective motive for killing Lua, the evidence of planning and manner of killing is sufficient to support the verdict. (*See, e.g., Mayfield, supra*, 14 Cal.4th at p. 768 ["The shot was fired at [the victim's] face, which is consistent with a preexisting intent to kill"].) Proof of the defendant's actual motive is not required. "A senseless, random, but premeditated, killing supports a verdict of first degree murder." (*People v. Edwards* (1991) 54 Cal.3d 787, 814 [Edwards drove past two victims, stopped and spoke to get their attention, and shot both in the head].)

> Thus we conclude the evidence is sufficient to support the jury's verdict, given the manner and circumstances of the killing.

*Duenas*, 2014 WL 2111212, at *3–4. Petitioner raised this claim in a petition for review filed with the California Supreme Court. Lodg. Doc. No. 13 (Petition for Review) at 8. This petition was denied.[3] Lodg. Doc. No. 14 (Order Denying Petition for Review).

### 1.   <u>Applicable Legal Standards</u>

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

---

[3] The Supreme Court of California noted that the denial was without prejudice as to any relief to which petitioner might be entitled after the Supreme Court decides *In re Alatriste*, S214652 and *In re Bonilla*, S214960. Lodg. Doc. No. 14 (Order Denying Petition for Review). *Alatriste* and *Bonilla* raise the issue of whether a juvenile's Eighth Amendment rights are violated when he is sentenced to a lengthy prison term which, though authorized by statute, is effectively a life sentence insofar as it precludes a parole release in his lifetime. *See In re Alatriste*, 220 Cal. App. 4th 1232, 1235, 163 Cal. Rptr. 3d 748, 749 (2013), review granted and opinion superseded, 317 P.3d 1183 (Cal. 2014), and review granted and opinion superseded sub nom. *In re Bonilla*, 317 P.3d 1184 (Cal. 2014).

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

If the record supports conflicting inferences, the reviewing court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133, 130 S. Ct. 665, 175 L. Ed. 2d 582 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." *Coleman*, 566 U.S. at 655. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but

whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Under *Jackson*, the Court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the Anti-Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011)). *See also Coleman*, 566 U.S. at 651 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015) (same).

## 2. **Analysis**

The California Court of Appeal found that the jury's first degree murder verdict was supported by substantial evidence. It emphasized that the jury could conclude that petitioner acted with premeditation by approaching the victim with a concealed firearm and engaging him in benign conversation designed to lower his guard. *Duenas*, 2014 WL 2111212, at *3. It also noted that the method of killing – a single shot to the head at close range – was sufficiently suggestive of deliberation. *Id*. By contrast, petitioner argues that the evidence permits only the opposite conclusion - that the shooting was a completely impulsive act undertaken in self-defense. ECF No. 1 at 32-33. His argument is primarily founded on the absence of any evidence of mutual hostility between himself and the victim which might suggest premeditation. *Id*. at 33. Petitioner also points out that no witness testified to foreseeing the attack and contends that this omission is clear evidence that the act was unplanned. *Id*.

Petitioner is not entitled to habeas relief on this claim. "The elements of first-degree murder can be established by circumstantial evidence and inferences drawn from it." *United States v. Free*, 841 F.2d 321, 325 (9th Cir. 1988). Premeditation may be inferred from a "petitioner's calculated behavior both before and after the killing . . . ." *Jackson*, 443 U.S. at 325.

1  Additionally, a first degree murder conviction in California can be sustained solely by manner of

2  killing evidence which is strongly suggestive of premeditation and deliberation. *Drayden,* 232

3  F.3d at 709. Accordingly, the court concludes that the Court of Appeal's rejection of petitioner's

4  sufficiency claim was not clearly erroneous or an unreasonable application of *Winship* to the facts

5  at hand. Nor can it be said that the decision was "so lacking in justification that there was an

6  error well understood and comprehended in existing law beyond any possibility for fairminded

7  disagreement." *Richter*, 562 U.S. at 103.

8       The extraordinary difficulty petitioner faces in challenging the sufficiency of the evidence

9  underpinning his conviction bears reemphasis. He has undertaken efforts to point out conflicts in

10  the evidence where inferences could have been drawn in his favor and to present an alternate

11  theory of the killing. The jury presumably rejected these inferences and arguments when it

12  convicted him of first degree murder, however, and this court cannot reweigh the evidence on its

13  own. *See Cavazos,* 565 U.S. at 2 ("[I]t is the responsibility of the jury — not the court — to

14  decide what conclusions should be drawn from evidence at trial."). Instead, a jury's verdict must

15  stand where, as here, it could have been reached rationally. *Drayden,* 232 F.3d at 709-710; *see*

16  *also Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam) (on federal habeas review

17  the court must presume jury resolved conflicts in favor of prosecution and defer to that

18  resolution).

19  **B.     Failure to Instruct on the Lesser Included Offense of Voluntary
          Manslaughter Based on Provocation**

20

21       Next, petitioner contends that the trial court erred in refusing his counsel's request for an

22  instruction on voluntary manslaughter based on sudden quarrel or heat of passion. ECF No. 1 at

23  34-36. The trial court reasoned that such an instruction was unwarranted because the facts of the

24  case did not indicate the petitioner was angry or provoked by the conversation he had with the

25  victim prior to the shooting. Lodg. Doc. No. 6 (Reporter's Transcript, Vol. IV) at 992-993. The

26  Court of Appeal agreed with the trial court, reasoning:

27

28

Defendant contends his testimony that Lua called his aunt a "nasty bitch" and said "[f]uck her and fuck you" provided sufficient evidence to warrant instruction on voluntary manslaughter based on a sudden quarrel or heat of passion. We are not persuaded.

*A. Background*

Defendant requested instruction on heat of passion manslaughter. The prosecutor objected that there was insufficient evidence to require the instruction, first arguing that words were insufficient to show provocation, then that defendant testified "he didn't feel anything; he was not affected by the stares, he was not affected by the words. [¶] The only reason he acted was as a result of the actions by the victim and not as a result of the words that were spoken to him [by] the victim." Defense counsel argued defendant's fearfulness created a hybrid situation in which both provocation and perfect or imperfect self-defense could be argued.

The trial court refused to give the requested instruction, stating: "I think your client was clear ... it was self-defense. He wasn't provoked. He wasn't angry. He was scared, which goes to the self-defense, but" not to provocation. "I don't believe the conversation that your client had with the victim rises to provocation."

*B. Law and Analysis*

One form of manslaughter is an unlawful killing "upon a sudden quarrel or heat of passion." (§ 192, subd. (a); see *id*. § 188 [malice may be implied "when no considerable provocation appears"].) Even when a person premeditates a killing, "the law acts out of forebearance for the weakness of human nature and, where sufficient facts are shown, will disregard the actual deliberate and malicious intent and reduce the crime to manslaughter." (*People v. Van Ronk* (1985) 171 Cal.App.3d 818, 823; see *People v. Rios* (2000) 23 Cal.4th 450, 460–462; *People v. Czahara* (1988) 203 Cal.App.3d 1468, 1478 [finding provocation means "defendant's behavior, while still reprehensible, is an understandable product of common human weakness, and therefore partly excusable"].) Our Supreme Court recently clarified that the provocation must be sufficient to cause a reasonable person to act rashly, rather than to kill. (*People v. Beltran* (2013) 56 Cal.4th 935, 938–939, 949–950 (*Beltran* ).)

A defendant is generally entitled to instructions on a theory of defense only if that theory is supported by substantial evidence. (*People v. Souza* (2012) 54 Cal.4th 90, 115–116; *see People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144 [as applied to provocation].) Here, no evidence supports the notion that defendant acted out of passion when he shot Lua in the head at close range. There was no evidence defendant acted rashly or that his judgment was impaired. He testified that he acted as he did because he discerned a threat based on Lua's demeanor and movements. This is evidence of

13

judgment, not passion, and it is not evidence that defendant was provoked. (*See People v. Moye* (2009) 47 Cal.4th 537, 552–554 [Moye testified victim's actions caused him to act in self-defense, not out of lack of judgment]; *People v. Manriquez* (2005) 37 Cal.4th 547, 585 (*Manriquez* ) ["no showing [Manriquez] exhibited anger, fury, or rage" when he acted].)

Even if there were evidence supporting the notion that defendant was provoked, no evidence supports the additional requirement of the heat of passion defense—that any such provocation be objectively reasonable. As we explain post, even assuming the jury believed defendant's testimony that Lua verbally disparaged him and his aunt, Lua's verbal acts were clearly insufficient to cause a reasonable person to act without judgment, as the defense requires. Thus the heat of passion theory behind defendant's killing of Lua was not supported by substantial evidence.

"Provocation is adequate only when it would render an ordinary person of average disposition 'liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment.' " (*Beltran*, *supra*, 56 Cal.4th at p. 957.) "The provocation may be anything that arouses great fear, anger, or jealousy." (1 Witkin & Epstein, Cal.Criminal Law (4th ed. 2012) Crimes Against the Person, § 233, p. 1056.) However, cases finding provocation typically involve adultery, a violent assault or other extreme acts by the victim; a simple assault or rude behavior rarely suffices. (*Id.* §§ 234–235, pp. 1057–1059.) This flows from the objective component of the test, that is, that the acts of the victim must be serious enough to obscure the reason or inflame the passions of a reasonable person. Thus, although verbal abuse may be sufficient, such abuse must be so extreme as to be likely to inflame a reasonable person. (*Id.* §§ 236–237, pp. 1059–1062; *see People v. Lee* (1999) 20 Cal.4th 47, 59–60 [an argument is not enough].)

Words alone will rarely cause a reasonable person to become inflamed and lose his self-control. (*See People v. Gutierrez* (2009) 45 Cal.4th 789, 826 ["voluntary manslaughter instruction is not warranted where the act that allegedly provoked the killing was no more than taunting words, a technical battery, or slight touching"]; *Manriquez*, supra, 37 Cal.4th at p. 586 [calling Manriquez a "mother fucker" and taunting him insufficient]; *People v. Najera* (2006) 138 Cal.App.4th 212, 216, 226 [calling Najera a "faggot" and continuing a heated argument was insufficient]; *People v. Lucas* (1997) 55 Cal.App.4th 721, 739–740 [Lucas shot into car; even if occupants were smirking, giving him dirty looks and calling him names, insufficient]; cf. *People v. Le* (2007) 158 Cal.App.4th 516, 518–523, 525–526 [prolonged humiliation caused by Le's wife's infidelity with a gang member who Le thought would kill him, and who taunted Le, sufficed; it was error to instruct that words alone were insufficient].)

By this standard, what defendant claimed Lua said falls short of those kinds of words that would inflame a reasonable person to act rashly and without

judgment.

Moreover, any error was harmless.

We apply the *Watson* standard of prejudice (*see People v. Watson* (1956) 46 Cal.2d 818, 836) to any error. (*See Beltran*, *supra*, 56 Cal.4th at p. 955; *People v. Thomas* (2012) 53 Cal.4th 771, 814; *People v. Breverman* (1998) 19 Cal.4th 142, 177–178.)3 Under that standard, it is not reasonably probable instructing the jury on heat of passion manslaughter would have made any difference to the outcome in this case.

As set forth ante at footnote 1, CALCRIM No. 570 defines the provocation needed to reduce a murder to manslaughter, informing the jury it must cause "a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment[,]" and can occur over a short period of time; it also informs that defendant "is not allowed to set up his own standard of conduct" but the jury must "consider whether a person of average disposition, in the same situation and knowing the same facts, would have reacted from passion rather than from judgment." (CALCRIM No. 570.)

Further, the instruction requires that the People bear the burden of proof beyond a reasonable doubt that defendant did not act out of heat of passion. (CALCRIM No. 570.)

In this case, the jury was already instructed that "[p]rovocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter." (CALCRIM No. 522.) The jury was also instructed the People had the burden to prove first degree murder over any lesser crime beyond a reasonable doubt. (CALCRIM No. 521.) In the face of such instructions, given the first degree murder finding, it is clear the jury rejected defendant's version of events. His claims about Lua's statements were uncorroborated, and by his own testimony they did not make him angry; therefore, it is not reasonably probable a heat of passion instruction further defining provocation would have made any difference to the verdict in this case.

Accordingly, we reject defendant's contentions regarding provocation.

/////

/////

*Duenas*, 2014 WL 2111212, at *4–6.  This claim was presented to the California Supreme Court and summarily rejected.  Lodg. Doc. No. 13 (Petition for Review) at 12-16; Lodg. Doc. No. 14 (Order Denying Petition for Review).

### 1.  **Applicable Legal Standards**

First, any argument that a state court misapplied state law to prejudicial effect is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 67-68.  Turning to federal law, the United States Supreme Court has held that a trial court's failure to instruct on a lesser included offense in a capital case rises to the level of constitutional error if there was sufficient evidence to support the instruction.  *See Beck v. Alabama*, 447 U.S. 625, 638 (1980).  By contrast, the failure to instruct on lesser included offenses in a non-capital case generally does not present a federal constitutional claim.  *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000).  Jury instruction errors will only warrant federal habeas relief if they "so infect[] the entire trial that the resulting conviction violates due process."  *Estelle*, 502 U.S. at 71.  A petitioner carries an "especially heavy" burden where he challenges a trial court's failure to give an instruction because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  Finally, there is no constitutional error in failing to instruct on a defense theory that is not supported by "evidence sufficient for a reasonable jury to find in his favor."  *Mathews v. United States*, 485 U.S. 58, 63 (1988); *Clark v. Brown*, 450 F.3d 898, 904-905 (9th Cir. 2006) ("When habeas is sought under 28 U.S.C. § 2254, [f]ailure to instruct on the defense theory of the case is reversible error if the theory is legally sound and evidence in the case makes it applicable.") (quoting *Beardslee v. Woodford*, 358 F.3d 560, 577 (9th Cir. 2004)) (internal quotations omitted).

### 2.  **Analysis**

The Court of Appeal rejected petitioner's claim after concluding, as the trial court did before it, that the evidence did not support a finding that petitioner was provoked into shooting the victim.  *Duenas*, 2014 WL 2111212, at *5.  Under California law, "[t]he factor which distinguishes the 'heat of passion' form of voluntary manslaughter from murder is provocation."  *People v. Lee*, 20 Cal. 4th 47, 59, 82 Cal. Rptr. 2d 625, 971 P.2d 1001 (1999).  "The provocation

16

which incites the defendant to homicidal conduct in the heat of passion must be caused by the victim, or be conduct reasonably believed by the defendant to have been engaged in by the victim." *Id*. (internal citation omitted). "[T]he conduct must be sufficiently provocative that it would cause an ordinary person of average disposition to act rashly or without due deliberation and reflection." *Id*. As the Court of Appeal noted, petitioner testified that his decision to shoot the victim was motivated by a fear for his safety rather than any provoked passion. Lodg. Doc. 5 (Reporter's Transcript Vol. III) at 797. The Court of Appeal also reasonably determined that the alleged provocation at issue - the victim's verbal disparagement of the petitioner and his aunt - would not have provoked a reasonable person. *See People v. Najera*, 138 Cal. App.4th 212, 226 (2006) ("A provocation of slight and trifling character, such as words of reproach, however grievous they may be, or gestures, or an assault, or even a blow, is not recognized as sufficient to arouse, in a reasonable man, such passion as reduces an unlawful killing with a deadly weapon to manslaughter."); *People v. Gutierrez*, 45 Cal. 4th 789, 826 (2009) (holding that "a voluntary manslaughter instruction is not warranted where the act that allegedly provoked the killing was no more than taunting words, a technical battery, or slight touching."); *People v. Manriquez*, 37 Cal. 4th 547, 586 (2005) (victim's reference to defendant as a "mother fucker" and taunting defendant by saying "if defendant had a weapon, he should take it out and use it . . . plainly [was] insufficient to cause an average person to become so inflamed as to lose reason and judgment."). Given that there was insufficient evidence to support a provocation instruction, this court finds that the Court of Appeal's rejection of this claim was not contrary to or an unreasonable application of federal law.

This claim also fails because, as noted above, the failure to instruct on lesser included offenses in a non-capital case does not present a federal constitutional claim. *Solis*, 219 F.3d at 929; *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). The Ninth Circuit has held that this rule may sometimes be excepted where a court declines to instruct a jury on lesser included offenses and those offenses are consistent with the defendant's theory of the case. *Solis*, 219 F.3d at 929. As previously

stated, however, petitioner's own testimony indicated that his decision to shoot the victim was motivated by self-defense rather than provocation. Accordingly, the provocation instruction was not consistent with his theory of the case and the trial court's refusal to offer it does not give rise to a cognizable habeas claim.

### C.     Concealment of Evidence Instruction

Petitioner's next claim is that the trial court violated his due process rights when it instructed the jury that they could infer petitioner's awareness of his guilt if they concluded that he had tried to conceal evidence. ECF No. 1 at 10. The trial court determined, over the objections of petitioner's counsel, that there was sufficient circumstantial evidence to allow the jury to conclude that petitioner hid the gun used in the murder. Lodg. Doc. No. 6 (Reporter's Transcript, Vol. IV) at 979-983. The Court of Appeal agreed with the trial court and reasoned:

> *Consciousness of Guilt*
> Over defense objection, the trial court gave a tailored version of pattern instruction CALCRIM No. 371, as follows:
>
> > "If the defendant tried to hide evidence, that conduct may show that he was aware of his guilt. [¶] If you conclude the defendant made such an attempt, it is up to you to decide its meaning and importance; however, evidence of such an attempt cannot prove guilt by itself."
>
> This instruction defines a permissive, not compelled, inference the jury may draw if it finds the defendant did in fact try to hide evidence.
>
> Defendant objected to the instruction, but the trial court found his evasive testimony about what he did with the gun was sufficient to justify the instruction. We agree. Defendant testified in detail about the fear which led him to buy the gun, and about where he stored it when he was not carrying it. That gun was important to him. That he claimed not to remember what he did with it after he shot Lua gave rise to a rational inference that he concealed it for the purpose of hiding his guilt. The instruction left the jury free to draw an innocent inference, that is, that in his panic, defendant simply forgot what he did with the gun. (*See People v. Avila* (2009) 46 Cal.4th 680, 709 [instruction does not compel the jury to draw any inference nor does it "impermissibly lessen the prosecutor's burden of proof even when erroneously given"].) But the jury was not compelled to accept defendant's testimony that he did not remember what

18

1   he did with the gun, but could rationally find he concealed it to avoid
2   detection or prosecution. (*See People v. Jackson* (1996) 13 Cal.4th 1164,
    1225.)

3

4   *Duenas*, 2014 WL 2111212, at *6–7.  This claim was included in a petition for review to the

5   California Supreme Court which was summarily denied.  Lodg. Doc. No. 13 (Petition for

6   Review) at 17-20; Lodg. Doc. No. 14 (Order Denying Petition for Review).

7                   **1.  <u>Applicable Legal Standards</u>**

8           Jury instructions are generally matters of state law and, as such, federal courts are bound

9   by a state appellate court's determination that a particular instruction was warranted under state

10  law.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state

11  court's interpretation of state law, including one announced on direct appeal of the challenged

12  conviction, binds a federal court sitting in habeas corpus.").  In order to warrant federal habeas

13  relief, a challenged jury instruction "cannot be merely undesirable, erroneous, or even universally

14  condemned, but must violate some due process right guaranteed by the fourteenth amendment."

15  *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) (internal quotations omitted).  A challenge to a trial

16  court's jury instructions is reviewed under the standards in *Brecht v. Abrahamson,* 507 U.S. 619,

17  637 (1993) – that is, whether the error had a "substantial and injurious effect in determining the

18  jury's verdict."  *See California v. Roy*, 519 U.S. 2, 5 (1996).

19                   **2.  <u>Analysis</u>**

20          Petitioner is not entitled to habeas relief on this claim.  As noted, this court is bound by

21  the Court of Appeal's determination that CALCRIM No. 371 was properly warranted under

22  California law.  *Bradshaw*, 546 U.S. at 76.  Additionally, the instruction permitted only an

23  inference of guilt if the jury actually concluded that petitioner had tried to hide the murder

24  weapon.  *See Francis v. Franklin*, 471 U.S. 307, 314 (1985) ("A permissive inference suggests to

25  the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require

26  the jury to draw that conclusion.").  The trial court cautioned the jury that:

27          Some of these instructions may not apply, depending on your findings about the
28          facts of this case. Do not assume just because I give a particular instruction that I

                                                   19

am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them.

Lodg. Doc. No. 2 (Clerk's Transcript Vol. II) at 410. Moreover, the Court of Appeal's determination that the evidence supported such a finding was reasonable. *Francis*, 471 U.S. at 314-15 ("A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury."). Finally, given the substantial evidence of petitioner's guilt presented at trial, there is no reasonable basis on which to find that this instruction, even if erroneous, had a substantial or injurious effect on the jury's verdict. *See Brecht*, 507 U.S. at 639 (finding trial error harmless where "the State's evidence of guilt was, if not overwhelming, certainly weighty" and "other circumstantial evidence . . . also pointed to petitioner's guilt").

### D.      The Constitutionality of Petitioner's Sentence

Petitioner's final claim is that his sentence of fifty years to life violates the Eighth Amendment insofar as it effectively amounts to a life sentence without the possibility of parole. ECF No. 1 at 8-9, 37-39. He notes that he was seventeen at the time of the murder and argues the United States Supreme Court's decision in *Miller v. Alabama*, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) serves to invalidate his sentence. ECF No. 1 at 37-39. The Court of Appeal rejected this argument:

> *Cruel and Unusual Punishment*
> Defendant contends his 50–year sentence violates the Eighth Amendment because he was a minor when he murdered Lua with a firearm. We disagree.
>
> Under a series of recent decisions, the United States Supreme Court has construed the Eighth Amendment to preclude a person from being sentenced to death for any crime committed as a juvenile (*Roper v. Simmons* (2005) 543 U.S. 551 [161 L.Ed.2d 1] ), preclude such a person from being sentenced to life without parole (LWOP) for a non-homicide (*Graham v. Florida* (2010) 560 U.S. 48 [176 L.Ed.2d 825] ), and preclude such a person from being sentenced to LWOP for a homicide unless the sentencing body has an opportunity to consider mitigating circumstances calling for a lesser sentence (*Miller v. Alabama* (2012) 567 U.S. —— [183 L.Ed.2d 407] ). Defendant contends his sentence violates the principles underlying *Miller*.

20

In *People v. Caballero* (2012) 55 Cal.4th 262 (*Caballero*), our Supreme Court held that a sentence to a term of years that exceeds the normal life expectancy of a person who committed a non-homicide offense was equivalent to an LWOP sentence and therefore invalid under Graham. (*Caballero*, supra, 55 Cal.4th at p. 268.) The court defined "life expectancy" to mean "the normal life expectancy of a healthy person of defendant's age and gender living in the United States." (*Id.* at p. 267, fn. 3.)

On appeal, defendant concedes that his sentence does not exceed his natural life expectancy, and estimates he will be eligible for parole when he is about 68 and a half years old. (*See People v. Mendez* (2010) 188 Cal.App.4th 47, 62–63 [average life expectancy for 18–year–old male is 76 years].) This dooms defendant's contention of error, because it shows that his sentence does not equate to LWOP, and does not violate *Miller* or its underlying principles. *Caballero* was clear that "life expectancy" did not refer to an average prison inmate's life expectancy, but normal life expectancy. (*Caballero*, supra, 55 Cal.4th at p. 267, fn. 3.)

Defendant cites *People v. Perez* (2013) 214 Cal.App.4th 49 for the proposition that he must have an opportunity for a "meaningful" or "substantial" life expectancy outside prison, and that "the seven and a half years he would have remaining in his life after having spent 50 years in prison can hardly be characterized as 'meaningful.'" We will not assume defendant will have no opportunity to do something useful with his life, even if he is old and infirm. Many have led meaningful lives during periods of advanced age and infirmity. The probation report shows that defendant is married with two children. He can participate in the lives of his children—and perhaps grandchildren—to some extent from prison, and can do so more fully if he is ever paroled, even later in life. (See, inter alia, *In re T.S.* (2003) 113 Cal.App.4th 1323, 1328.) That participation alone provides a worthy, redemptive, and "meaningful" purpose in life.

As defendant concedes, the Legislature has determined that persons such as defendant, who use firearms to premeditatedly murder another person, should serve 50 years in prison. (§§ 190, subd. (a), 12022.53, subds. (a)(1), (d) & (h).) Application of that legislative norm in this case does not "shock the conscience" simply because defendant was a week shy of 18 when he murdered Lua. (Cf. *In re Lynch* (1972) 8 Cal.3d 410, 424 [applying California Constitution].) Nor has defendant shown that the Eighth Amendment was violated. Accordingly, we reject defendant's cruel punishment claims.

*Duenas*, 2014 WL 2111212, at *7–8. This claim was raised before and denied by the California

Supreme Court. Lodg. Doc. No. 13 (Petition for Review) at 3-7; Lodg. Doc. No. 14 (Order

Denying Petition for Review).

### 1. **Applicable Legal Standards**

A criminal sentence that is disproportionate to the conviction offense may violate the Eighth Amendment. *Solem v. Helm*, 463 U.S. 277, 284 (1983). In *Graham v. Florida*, 560 U.S. 48, 74 (2010), the United States Supreme Court held that the Eighth Amendment prohibits a sentence of life without parole for juvenile offenders who commit non-homicide offenses. Subsequently in *Miller*, the Court held that the Eighth Amendment forbade sentencing schemes which mandated life in prison without the possibility of parole for juvenile offenders, including those juveniles who had committed homicide. 132 S. Ct. at 2469. *Miller* did not, however, impose a categorical bar on life without parole for juveniles; instead it held that the Eighth Amendment required a judge or jury to account for the juvenile's age and other mitigating factors before imposing a life sentence without parole. *Id*.

### 2. **Analysis**

The Court of Appeal's rejection of petitioner's Eighth Amendment claim was not unreasonable. First, the United States Supreme Court has not held that an indeterminate life sentence for a juvenile homicide offender violates the Eighth Amendment. *See Contreras v. Sherman*, No. CV 15-3768-JAK (JPR), 2016 U.S. Dist. LEXIS 77323 at *45 (C.D. Cal. May 5, 2016). As such, this court cannot say that the Court of Appeal's decision is contrary to clearly established federal law. Additionally, both the Court of Appeal and the respondent point out that petitioner's life expectancy is seventy-six years and that, under the terms of his sentence, he will be eligible for parole when he is sixty-eight. *Duenas*, 2014 WL 2111212, at *8; ECF No. 13 at 20. Moreover, respondent argues (and petitioner offers no contrary assertion) that California's new parole scheme, articulated in California Penal Code section 3051,[4] makes petitioner eligible

---

[4] A person who was convicted of a controlling offense that was committed before the person had attained 23 years of age and for which the sentence is a life term of 25 years to life shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.

Cal. Pen. Code § 3051(b)(3).

for parole during his twenty-fifth year of incarceration. ECF No. 13 at 21. Lastly, any contention that petitioner's sentence is unconstitutional because it is disproportionate to the crime he was convicted of is also unavailing. Petitioner was convicted of first degree murder, shooting into an occupied vehicle, and unlawful possession of a firearm by a minor. The United States Supreme Court has upheld the proportionality of life sentences without possibility of parole for far less violent crimes. *See, e.g., Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (upholding a life sentence without parole for possession of 672 grams of cocaine).

## IV. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: November 20, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE